***NOT FOR PUBLICATON***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLANTIC SHORE SURGICAL ASSOCIATES, on behalf of PATIENT JE, <br><br> Plaintiff, <br><br> v. <br><br> UNITED HEALTHCARE INSURANCE COMPANY, ALCATEL-LUCENT, and ALCATEL-LUCENT MEDICAL EXPENSE PLAN FOR ACTIVE MANAGEMENT EMPLOYEES, <br><br> Defendants. | Civil Action No. 3:20-cv-03065 <br><br> OPINION |

**WOLFSON, Chief Judge:**

Plaintiff Atlantic Shore Surgical Associates ("Atlantic Shore") sues United Healthcare Insurance Company ("United"), Alcatel-Lucent USA Inc., and Alcatel-Lucent Medical Expense Plan for Active Management Employees (collectively, "Defendants")[1] for unpaid out-of-network medical services, in particular, a complex abdominal surgery. Atlantic Shore brings suit pursuant

---

1   The parties argue over how Defendants are named. Alcatel-Lucent USA Inc. was renamed Nokia of America Corporation in 2018 and Alcatel-Lucent Medical Expense Plan for Management Employees was renamed Nokia Medical Expense Plan for Management Employees in 2017. *See* Def. Br., Ex. A, ¶¶ 2, 4. Atlantic Shore appears unwilling to acknowledge the name changes because the "surgical services at issue occurred in 2016," when "the Alcatel-Lucent Plan applies, not the subsequent 2018 Nokia Plan." Pl. Br., at 1 n.1. That is true, but as Defendants concede, "[it] is not in dispute." Def. Rep. Br., at 3. Defendants have supplied their current legal names for an "unremarkable and informational purpose"—to ensure that "any judgment or relief [Atlantic Shore] might hope to obtain in this case would be []enforceable." *Id.* They do not do so to "disclaim their obligations under the 2016 Plan . . . and do not argue that they would not be responsible for any judgment levied against them by the Court." *Id.* Based on these representations, Atlantic Shore would not be prejudiced if Defendants proceeded under corrected names. *See, e.g.*, *Mammone v. Solna Web Press, Inc.*, No. 92-3813, 1992 WL 350215, at *2 (E.D. Pa. Nov. 23, 1992). This Opinion and accompanying Order are effective as to Defendants as newly named.

1

to the Earned Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 1001, *et seq*. Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6) on the basis of an anti-assignment clause in J.E.'s Plan, which Atlantic Shore contends is unenforceable. For the following reasons, I **GRANT** Defendants' motion and **DISMISS** all claims.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]**

"Because [I] write for the parties who are familiar with the factual context and procedural history of this case, [I] recite only the facts that are relevant to [my] analysis." *Bentley v. Atl. Cty., NJ*, 382 Fed. App'x. 205, 206 (3d Cir. 2010). On June 10, 2016, Atlantic Shore performed abdominal surgery on J.E., who had a mass on her left ovary and a "large bowel obstruction." Am. Compl., ¶ 4. The surgery involved a "resection of the colon," "repaired . . . bowel loops," an appendectomy, a hysterectomy, a partial omentectomy, and a cystoscopy. *Id.* J.E. unexpectedly returned to the operating room for "additional surgery" the same day, including "excision procedures" and a laparotomy. *Id.* ¶¶ 4, 16. Atlantic Shore billed Defendants $271,193.27.[3] *Id.* ¶ 5. Because Atlantic Shore did not participate in United's network, and based on various coverage terms and exclusions, Defendants paid just $5,678.54. *Id.* ¶¶ 5, 17-20, 22-27.

Atlantic Shore sued on March 19, 2020, arguing that Defendants violated "express Plan terms" in determining the reimbursement rate. *See* ECF No. 1. Atlantic Shore then filed an Amended Complaint on August 28, 2020. *See* ECF No. 11. Counts I and IV charge Defendants with underpaying for covered services, *see* 29 U.S.C. § 502(a)(1)(B), while Counts Two and Three

---

2   For the purposes of Atlantic Shore's motion, I accept the facts in the Amended Complaint as true and construe any factual disputes in the light most favorable to it. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003).

3   Alcatel-Lucent Medical Expense Plan for Active Management Employees is a self-funded ERISA Plan. Am. Compl., ¶ 12. United is Claims Administrator for the Plan. *Id.* ¶¶ 2, 11. Alcatel-Lucent, a "global telecommunications equipment company" and "subsidiary of Nokia," is Plan Administrator. *Id.* ¶ 12. J.E. is the Plan beneficiary. *Id.* ¶ 3.

assert breach of fiduciary duty. *Id.* § 404(a)(1)(B).[4] At issue on this motion is whether Atlantic Shore has a derivative cause of action under ERISA to sue Defendants. Atlantic Shore answers yes and points to an assignment it executed with J.E. for support. The assignment states in relevant part:

> I hereby convey . . .to the Designated Authorized Representative [Atlantic Shore Surgical Association] to the fullest extent permissible under the law and under any applicable employee group health plan(s) . . . any claim, cause of action or other right I may have to such group health plans . . . with respect to medical expenses incurred as a result of the medical services I received from the providers(s) and to the full extent per permissible under the law to claim or lien such medical benefits, settlement, insurance reimbursement and any applicable remedies, including but not limited to . . . any administrative and judicial actions. . . . by the Designated Authorized Representative to pursue such claim, chose in action or right against any liable party or employee group health plan(s), including, if necessary, to bring suit by the Designated Authorized Representative against such liable party or employee health plan in my name with derivative standing but at such Designated Authorized Representative's expenses.

Am. Compl., ¶ 41.

Defendants maintain that the assignment is void because of an anti-assignment clause in the Plan, which states in full:

> Benefits provided under the Plan are not subject to assignment or alienation. Assignment of plan payments to Providers who provide Covered Services are permissible. Assignments to creditors are not permissible.

Def. Br., Ex. A, art. 16, sec. 19, p. 116.[5]

---

[4] Defendants argue that certain Counts only apply to certain Defendants. Def. Br., at 4 n.4 ("Plaintiff asserts a claim for unpaid benefits only against two of the three Defendants, United and the Plan, in Count I and Count IV, respectively."). On this basis, they conclude, the pleadings are "internally inconsistent" and I am not "obligated to reconcile nor accept" them. *Id.* I need not address this issue because I dismiss all claims under the anti-assignment clause. *See infra.*

[5] Although Atlantic Shore did not attach the Plan to its Amended Complaint, I may properly consider it on this motion because it is integral to the claims, and because Defendants submitted it with their motion. *See, e.g., Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of N.J.*, 262 F. Supp. 3d 105, 110 (D.N.J. 2017) (holding that "the very foundation" of plaintiff's claim for healthcare benefits is the ERISA plan); *Star Multi Care Servs., Inc. v. Empire Blue Cross Blue Shield*, 6 F. Supp. 3d 275, 283 n.2 (E.D.N.Y. 2014) (finding that, since plaintiff's claim was based on an ERISA plan, the plan documents were integral to the complaint); *Hishmeh v. Aetna Health Inc.*, No. 16-5736, 2017 WL 4271449, at *3 (E.D.N.Y. Sept. 25,

3

## II.     LEGAL STANDARD

A court may dismiss an action under Fed. R. Civ. P. 12(b)(6) if a plaintiff fails to state a claim upon which relief can be granted. *Id.* When evaluating a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether a complaint is plausible, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court "takes note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court identifies allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 679). For example, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678, nor am I compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago*,

---

2017) (holding, in a suit brought by an out-of-network medical provider seeking reimbursement, that the court "will consider Aetna's health care plan documents").

4

629 F.3d at 131 (quoting *Iqbal*, 556 U.S. at 680). This is a "context-specific task that requires the [ ] court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### III. DISCUSSION

J.E.'s Plan is governed by ERISA, a tax and labor law that establishes "uniform federal standards for not only pension plans, but also welfare plans." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 225 (3d Cir. 2020). ERISA empowers participants, beneficiaries, and fiduciaries "to recover benefits due to [them] under the terms of [the] plan." 29 U.S.C. § 1132(a). Providers like Atlantic Shore may not sue insurers in their own right. *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 27 (1983) ("ERISA carefully enumerates the parties entitled to seek relief . . . it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action."); *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400-01 (3d Cir. 2004).

Providers may, however, obtain a derivative cause of action by assignment.[6] *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014). A valid assignment allows the provider to stand in the shoes of the participant and obtain not only the right to benefits under the plan, but the capacity to bring suit for non-payment. *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372-73 (3d Cir. 2015) (collecting cases). Until recently, this was the "almost universal" way for out-of-network providers to recoup compensation. *Am. Orthopedic & Sports*

---

6   The right to bring suit under ERISA was formerly called "statutory standing," but that label is "misleading, since the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014). Instead, it "is an issue that requires [a court] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim," and to "ask[] whether this particular class of persons ha[s] a right to sue under this substantive statute." *Id.* (quotations and citations omitted). I therefore refer to a provider's ability to sue by assignment as a "derivative cause of action," which more accurately captures what is going on.

5

*Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 451-53 (3d Cir. 2018). Still, a derivative cause of action gives way to an unambiguous anti-assignment clause. *Univ. Spine Ctr. v. Aetna, Inc.*, 774 Fed. App'x. 60, 63 (3d Cir. 2019) (finding such clauses "generally enforceable" even though ERISA fails to "provide clear guidance" on them); *see also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 150 (2009) ("[B]lack-letter law [is] that the terms of an unambiguous private contract must be enforced.").

Atlantic Shore does not substantively challenge whether the anti-assignment clause is ambiguous. *See* Pl. Br., at 3 (stating, in all, "to the extent that this provision is ambiguous, the Court should not construe it against Plaintiff as a matter of law on a motion to dismiss but permit discovery as to its meaning"). In any event, it is not.[7] Atlantic Shore instead challenges whether the clause is enforceable. But its arguments to that end are unavailing. Atlantic Shore first argues that the clause is not about assignments at all because the Plan's Table of Contents titles it "Alienation." Pl. Br., at 6. Setting aside the dubious implication that there is any difference between an anti-alienation clause and an anti-assignment clause, for which Atlantic Shore offers no support, the face of the clause expressly contradicts Atlantic Shore's claim: it reads "[b]enefits are not subject to *assignment*." Def. Br., Ex. A, art. 16, sec. 19, p. 116 (emphasis added). Atlantic Shore similarly argues that the anti-assignment clause is really a "spendthrift provision" because it "place[s] restrictions on the rights of third parties to take an interest in a plan member's benefits." Pl. Br., at 6. The clause is not so limited. Without elaborating, Atlantic Shore cites 26 C.F.R. §

---

[7] Contractual language is unambiguous if it is "capable of only one objectively reasonable interpretation." *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 76 (3d Cir. 2011). To answer that question, I consider the words themselves, any "alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning." *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1011 (3d Cir. 1980). The Plan's anti-assignment provision reads: "Benefits . . . are not subject to assignment or alienation. Assignment of plan payments to Providers who provide Covered Services are permissible." Def. Br., Ex. A, art. 16, sec. 19, p. 116. The first sentence is plain: J.E. cannot convey her right to benefits under the Plan.

1.401(a)-13(c) for support. Yet, section 1.401(a)-13(c) is irrelevant: it is contained within the Internal Revenue Code, and governs tax qualifications for pension plans/trusts, whereas J.E.'s Plan is a welfare plan and this matter is unrelated to taxation.

Atlantic Shore further argues that there is "a factual question concerning the [anti-assignment] provision," namely, it "differs from the [Summary Plan Description, or SPD]," which "does not have [one]." Pl. Br., at 6 n.4. Even if true, the terms of the SPD are not "enforced . . . as the terms of the plan itself . . . . [T]he summary documents, important as they are, provide communication with beneficiaries about the plan, but . . . their statements do not themselves constitute the terms of the plan." *CIGNA Corp. v. Amara*, 563 U.S. 421, 437 (2011). Relatedly, Atlantic Shore insists that it did not know about the Plan documents containing the anti-assignment clause. Pl. Br., at 6-7. That fails to move the needle because, as purported assignee, Atlantic Shore is charged with knowledge of all Plan terms, including those prohibiting assignments. *See, e.g.*, *Neuma, Inc. v. E.I. Dupont de Nemours & Co.*, 133 F. Supp. 2d 1082, 1088-89 (N.D. Ill. 2001); *IHC Health Servs. v. Wal-Mart Stores, Inc.*, No. 15-846, 2016 WL 3817682, at *7 (D. Utah July 12, 2016) ("As an assignee, IHC cannot avoid the terms of the [ERISA] Plan, regardless of whether IHC had notice of those terms.").

As a final matter, according to Atlantic Shore, it is dispositive that the anti-assignment clause itself permits "[a]ssignment of plan payments to Providers" for covered services. Atlantic Shore construes this sentence to confer a derivative cause of action, notwithstanding the first sentence expressly prohibiting benefits assignments. Atlantic Shore's position hinges on there being a meaningful difference between a mere "direction to pay a provider," which courts deem not to render an anti-assignment clause unenforceable, *see infra*, and an "assignment" of such payments, which—in Atlantic Shore's view—invalidates the entire anti-assignment clause.

7

I disagree with Atlantic Shore here too. To begin, the word "assignment" is a term of art connoting the "transfer of rights or property," and all that is transferred on the face of the clause is the right to receive payments from the Plan for services provided to J.E. *See* Black's Law Dictionary (9th ed. 2009). I must also construe J.E.'s Plan using traditional contract interpretation principles. *See Kemmerer v. ICI Americas Inc.*, 70 F.3d 281, 287 (3d Cir. 1995) ("[B]reach of contract principles, applied as a matter of federal common law, govern disputes arising out of the plan documents."); *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 572 (3d Cir. 2006) ("It is one thing to acknowledge that contract principles apply in ERISA cases. Clearly, they do."). These principles do not countenance Atlantic Shore's interpretation of the anti-assignment clause. One principle is to give effect to every term in a plan. *See, e.g.*, *Kitterman v. Coventry Health Care of Iowa, Inc.*, 632 F.3d 445, 459 (8th Cir. 2011) ("[W]hen interpreting the terms of the [ERISA] plan, we cannot ignore provisions or rewrite the plan documents to conform with what the [beneficiaries] actually read . . . . We must consider the documents as an integrated whole, and give effect to all parts of the contract.") (quotations and citation omitted); *Romero v. Allstate Ins. Co.*, No. 01-3894, 2016 WL 6876307, at *11 (E.D. Pa. Nov. 22, 2016) ("We construe the Plan, like a contract, as a whole to give effect to all its provisions and render them consistent with each other."). Atlantic Shore gives no effect to the sentence prohibiting benefits assignments, and reads the payment assignment provision in a vacuum, as if it were the sum and substance of the entire clause. That is an unnatural construction.

Another principle is to avoid reading inconsistencies into a plan. *See, e.g.*, *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 439 (3d Cir. 1997) (rejecting a proposed interpretation of a policy that would render a section superfluous); *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 795 (3d Cir. 2010) (instructing courts to consider "whether [a party's interpretation] renders any

8

language in the Plan meaningless or internally inconsistent"); *Cumberland Cnty. Improvement Auth. v. GSP Recycling Co., Inc.*, 358 N.J. Super. 484, 497 (App. Div. 2003) (instructing state courts to analyze contracts, including insurance policies, so as to avoid rendering any provision redundant or unnecessary).[8] Under Atlantic Shore's interpretation, the second sentence of the anti-assignment clause is fundamentally at odds with the first, to the point that it would render the first "ineffective." Pl. Br., at 3. I am not inclined to construe the Plan to permit what it had just a few words before forbid. The tools of contract interpretation instruct me to reconcile such a conflict rather than embrace it.

A third principle is to read contractual provisions in context, not in isolation. *See, e.g.*, *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231 (3d Cir. 2011); *Hardy ex rel. Dowdell v. Abdul-Matin*, 198 N.J. 95, 100-102 (2009). With that in mind, it would be a mistake to divorce the prohibition on benefits assignments from the permission to assign payments, as Atlantic Shore does. Nor would it make sense for the Plan to include an anti-assignment clause with language that defeats its own operation and purpose.[9] *Accord Pacifico v. Pacifico*, 190 N.J. 258, 266 (2007) ("The court's role is to . . . apply a rational meaning in keeping with the expressed general purpose."). Finally, a fourth principle is to read the terms in an ERISA plan according to their plain and ordinary meaning. *See, e.g.*, *McLain v. Metropolitan Life Ins. Co.*, 820 F. Supp.

---

[8]  I am permitted to look to state law to interpret the Plan, as long as that law does not undermine the purposes of ERISA. *See, e.g.*, *Heasley v. Belden & Blake Corp.*, 2 F.3d 1249, 1257 & n.8 (3d Cir. 1993).

[9]  Atlantic Shore's supplemental authority—*Prestige Inst. for Plastic Surgery, P.C. et al. v. Keystone Healthplan East, et al.*, No. 20-496, 2020 WL 7022668 (D.N.J. Nov. 30, 2020)—does not command a contrary result. *See* ECF No. 24. The plan at issue in *Prestige* contained a clause permitting benefits assignments in "certain situations." *Id.* at *4. Not only that, "[t]he very example given" in the clause was an "out-of-network physician who renders services at an in-network hospital," which is what happened in that case. *Id.* at 5. Here, on the other hand, J.E.'s Plan contains no express exception for benefits assignments. Further, I do not construe the "literal wording" in the second sentence of the anti-assignment clause as an implicit exception to the first sentence, or else the first sentence would have no meaning.

169, 175 (D.N.J. 1993) ("In interpreting the provisions of an ERISA plan, the terms . . . 'must be given their plain meanings, meanings which comport with the interpretations given by the average person.'") (quoting *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1084 (1st Cir. 1990)); *Brunswick*, 2010 WL 3283541, at *5 (same) (quoting *Am. Motorists Ins. Co. v. L-C-A Sales Co.*, 155 N.J. 29, 41 (1998)). This is arguably the crux of contract interpretation, requiring no less than to "interpret a contract . . . in a fair and common sense manner." *Ill. Nat. Ins.*, 653 F.3d at 231 (citations omitted). By its plain terms, the payment assignment provision confers a right to reimbursement, not a right to any Plan benefit. In fact, immediately prior, the anti-assignment clause specifically precludes all benefits assignments. Atlantic Shore would have me parse these provisions, not just separately, but as if the first did not exist.

   Atlantic Shore insists that this "flies in the face of Third Circuit law" because an assignment implies the right to go to court to enforce it. Pl. Br., at 3 ("An assignment of the right to payment logically entails the right to sue for non-payment."). True, the Third Circuit has said as much. *See N. Jersey Brain & Spine Ctr.*, 801 F.3d at 372 ("[An] assignment is only as good as payment if the provider can enforce it."). Yet, when it did so, the plans at issue did not contain anti-assignment clauses, and the court interpreted the assignments between provider and patient only. *Id.* at 373 ("This case presents the question of what type of assignment is necessary to confer derivative standing."). The question here is different: whether the payment assignment provision *in the anti-assignment clause in J.E.'s Plan* extinguishes the otherwise obvious bar on assignments, and confers a derivative cause of action under ERISA to that extent. If, as Atlantic Shore contends, the payment assignment provision alone were decisive of its capacity to sue, then the benefits assignment prohibition would be a dead letter—a result the contracting parties could not have contemplated, much less intended, and one that creates more problems than it solves by flouting

10

traditional contract interpretation principles. As such, I construe the payment assignment provision to be a mere permission to pay a provider directly.[10]

Having so found, it is clear that the anti-assignment clause is enforceable. Courts repeatedly enforce anti-assignment clauses regardless of whether there are also clauses permitting direct payments to providers. *See, e.g.*, *Ctr. for Orthopedics & Sports Med. v. Anthem Blue Cross Life & Health Ins. Co.*, No. 16-08876, 2018 WL 1440325, at *4 (D.N.J. Mar. 22, 2018) (holding that a plan provision permitting "payment to providers" did not invalidate a provision prohibiting assignment of benefits); *LB Surgery Ctr., LLC v. Boeing Co.*, No. 17-283, 2017 WL 5171222, at *4 (N.D. Ill. Nov. 8, 2017) (upholding provision providing that "[h]ealth care benefits . . . shall not be subject in any manner to . . . assignment," but that the plan "may, at the sole and absolute discretion of the Plan Administrator, pay benefits directly to . . . any provider of health care services"); *OSF Healthcare Sys. v. Weatherford*, No. 10-1400, 2012 WL 996900, at *5 (C.D. Ill. Mar. 23, 2012) (holding that discretion to pay provider directly did not affect enforceability of anti-assignment provision).[11]

In short, Atlantic Shore's interpretation of the payment assignment provision is untethered from the context of the anti-assignment clause. The words in the clause—read together, in light of each other—are how the Plan constrains insurers and patients alike, yet Atlantic Shore ignores

---

10    Supporting this interpretation, the Plan does not appear to contain any other direction or permission to pay providers directly. *See generally* Def. Br., Ex. A.

11    Atlantic Shore does not argue that Defendants implicitly waived their right to enforce the anti-assignment clause by sending a direct partial payment for J.E.'s surgeries, but such an argument would fail. *See, e.g.*, *Advanced Orthopedics & Sports Med. v. Blue Cross Blue Shield of Massachusetts*, No. 14-7280, 2015 WL 4430488, at *7 (D.N.J. July 20, 2015) (holding that "sending a direct payment alone does not constitute waiver of an anti-assignment provision, at least where the plan authorizes direct payment," and collecting cases); *MBody Minimally Invasive Surgery, P.C. v. Empire HealthChoice HMO, Inc.*, No. 13-6551, 2014 WL 4058321, at *3 (S.D.N.Y. Aug. 15, 2014) ("[H]ealth insurance companies routinely make direct payments to healthcare providers without waiving anti-assignment provisions.").

11

them, or at least reads them selectively for the purposes of justifying this action. Construing the anti-assignment clause on the whole instead, the first sentence clearly prohibits benefits assignments, and the second "merely provides further explanation" that a patient may instruct the insurer to pay a provider directly, notwithstanding its use of the word "assignment" to describe such circumstances. That does not render the clause unenforceable, nor does it afford Atlantic Shore a derivative cause of action to bring this suit. *Accord Univ. Spine Ctr. v. Aetna, Inc.*, No. 17-13654, 2018 WL 1757027, at *3 (D.N.J. Apr. 12, 2018) (enforcing an anti-assignment with the following language in it: "A direction to pay a provider is not an assignment of any right under this plan"); *Progressive Spine & Orthopaedics, LLC v. Anthem Blue Cross Blue Shield*, No. 17-536, 2017 WL 4011203, at *7 (D.N.J. Sept. 11, 2017) (enforcing an anti-assignment clause despite the following language: "You cannot assign Your right to receive payment to anyone else, except [to make payments directly to Providers for Covered Services]"). Atlantic Shore's claims are therefore foreclosed.[12] *See, e.g.*, *Community Med. Ctr. v. Local 464A UFCW Welfare Reimbursement Plan*, 143 Fed. App'x. 433, 436 (3d Cir. 2005) (holding that failure to show a valid assignment "is fatal to standing" under ERISA).

## IV. CONCLUSION

Atlantic Shore lacks a derivative cause of action, notwithstanding the assignment it executed with J.E. I **GRANT** Defendants' motion and **DISMISS** all claims.

**DATED**: June 14, 2021

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge

---

[12] Defendants make various other arguments in the event that the anti-assignment provision is unenforceable. *See* Def. Br., at 12-13 (arguing that the scope of the assignment is too narrow to permit a claim for breach of fiduciary duty); *id.* at 13-15 (arguing that Counts Two and Three are duplicative of Counts One and Four); *id.* at 15-16 (arguing that Nokia is not a proper party to Count Three because it delegated its claims administration function and thus exercised no discretion related to Atlantic Shore's Complaint). I need not address them because I find the anti-assignment clause is enforceable.